# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

Dina Valladares;
And
Eddy Barrios

CASE NO.

Plaintiffs,

v.

TransUnion, LLC.

Defendant.

## COMPLAINT AND JURY TRIAL DEMAND

### INTRODUCTION

1. This is a complaint for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Plaintiffs request a trial by jury.

### PARTIES

2. Plaintiffs are natural persons and citizens of the United States of America. Plaintiffs are a "consumer" within the meaning of the FCRA and FDCPA.

3. Defendant, TransUnion, LLC (hereinafter TransUnion) is a For-Profit Corporation that has corporate offices in Austin, Texas, as well as, Fort Worth, Texas. Additionally, TransUnion is actively providing credit reports on over one million consumers in the Eastern District of Texas. TransUnion is registered to do business in Texas and has a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f),

and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is conferred by 15 U.S.C § 1681(p) and 28 U.S.C. § 1331.

5. Venue in this District is appropriate under 28 U.S.C. § 1391 (b).

## STATEMENT OF FACTS

6. By the affirmative act of opting out via optoutprescreen.com, provided by the Federal Trade Commission ("FTC"), Plaintiffs opted out of prescreened offers of credit and insurance.

7. Plaintiffs chose to opt out of receiving such prescreened offers to protect the personal, private information contained in their credit reports thereby limiting who or what could access her credit reports. The FTC provides the following information to opt out:

> "Tired of having your mailbox crammed with ads and other mail you didn't ask for, like preapproved credit card applications? The good news is that there are ways you can cut down on how much unsolicited mail you get—.
>
> **How To Stop Credit Card and Insurance Offers**
>
> You can decide that you don't want to get prescreened offers of credit and insurance in the mail. If you want to opt out of those offers, you have two choices:
>
> - opt out of getting them for five years
> - opt out of getting them permanently
>
> **To opt out for five years:** Go to optoutprescreen.com or call 1-888-5-OPT-OUT (1-888-567-8688). The phone number and website are operated by the major credit bureaus.
>
> **To opt out permanently:** Go to optoutprescreen.com or call 1-888-5-OPT-OUT (1-888-567-8688) to start the process. **But to complete your request, you'll need**

2

**to sign and return the Permanent Opt-Out Election form you'll get after you've started the process.**

When you call or visit optoutprescreen.com, they'll ask for your personal information, including your name, address, Social Security number, and date of birth. Sharing your Social Security number and date of birth is option, but the website says that giving this information can help them ensure that they can successfully process your request. It says the information you give is confidential and will be used only to process your request to opt out."[1]

8. On 06/21/2017, Plaintiff, Dina Valladares, opted out via optoutprescreen.com, thereby notifying the consumer reporting agencies ("CRAs") that participate and coordinate with optoutprescreen.com to stop publishing their information to subscribers and users. Defendant TransUnion is one of the four consumer reporting agencies that participate and coordinate with optoutprescreen.com. *See Exhibit A.*

9. By electing to choose the five (5) year electronic opt out option on optoutprescreen.com, TransUnion was not allowed to sell Dina Valladares's, personal data for promotions or insurance offers for the time period of 06/27/2017 through 06/27/2022. This period is calculated by starting with the sixth day after a consumer completes the electronic opt out form on optoutprescreen.com and then extending the opt out period for five years from that date.

10. On 01/14/2022, Plaintiff, Dina Valladares, obtained and reviewed their TransUnion credit report and discovered that, despite having opted out through optoutprescreen.com, TransUnion published and sold Plaintiff's personal information to a third party, Goldman Sachs Bank USA, on 02/15/2021. *See Exhibit B.*

11. Plaintiff, Dina Valladeres, did not have an account with Goldman Sachs Bank USA and did not grant them permission to review her TransUnion credit report. *See Exhibit C.*

---

[1] "How to Stop Junk Mail." Federal Trade Commission ("FTC"), May 2021. Available online at https://www.consumer.ftc.gov/articles/how-stop-junk-mail.

3

12. On 05/15/2019, Plaintiff, Eddy Barrios, opted out via optoutprescreen.com, thereby notifying the consumer reporting agencies ("CRAs") that participate and coordinate with optoutprescreen.com to stop publishing their information to subscribers and users. Defendant TransUnion is one of the four consumer reporting agencies that participate and coordinate with optoutprescreen.com. *See Exhibit D.*

13. By electing to choose the five (5) year electronic opt out option on optoutprescreen.com, TransUnion was not allowed to sell Eddy Barrios's personal data for promotions or insurance offers for the time period of 05/21/2019 through 05/21/2024. This period is calculated by starting with the sixth day after a consumer completes the electronic opt out form on optoutprescreen.com and then extending the opt out period for five years from that date.

14. On 01/25/2022, Plaintiff, Eddy Barrios, obtained and reviewed their TransUnion credit report and discovered that, despite having opted out through optoutprescreen.com, TransUnion published and sold Plaintiff's personal information to a third party, Ally Financial, on 05/28/2020. *See Exhibit E.*

15. Plaintiff, Eddy Barrios, did not have an account with Ally Financial and did not grant them permission to review his TransUnion credit report. *See Exhibit F.*

16. As stated by the venerable Consumer Reports, the credit reporting system was originally designed to serve the interests of financial institutions and continues to function in much the same way—despite its massive and growing effects on the economic welfare of ordinary customers. **The credit reporting system,** in short, **treats consumers** primarily <u>**as its product**</u>**, not as its customer.**

* * * * *

The CRAs earn revenue in a variety of ways, including by selling consumer credit reports to lenders, landlords, employers, and other institutions. They also earn revenue by charging consumers for enhanced access to their own credit reports and for services such as credit monitoring.[2]

17. The FCRA gives Plaintiffs the express right to limit the CRAs' ability to profit from providing access to Plaintiffs' personal information by opting out of the sale of their personal information to third parties:

Section 15 U.S.C. § 1681b(e) reads:

**Election of consumer to be excluded from lists**

> **(1) In general**
> A consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under subsection (c)(1)(B) in connection with a credit or insurance transaction that is not initiated by the consumer, by notifying the agency in accordance with paragraph (2) that the consumer does not consent to any use of a consumer report relating to the consumer in connection with any credit or insurance transaction that is not initiated by the consumer.
>
> **(2) Manner of notification**
> A consumer shall notify a consumer reporting agency under paragraph (1)—
>
>> **(A)** through the notification system maintained by the agency by the agency under paragraph (5); or
>>
>> **(B)** by submitting to the agency a signed notice of election form issued by the agency for purposes of this subparagraph.
>
> **(3) Response of agency after notification through system**
> Upon receipt of notification of the election of a consumer under paragraph (1) through the notification system maintained by the agency under paragraph (5), a consumer reporting agency shall—

---

[2] Ejaz, Syed. "A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It." Consumer Reports, June 10, 2021. Available online at https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf (bolding and underlining added).

**(A)** inform the consumer that the election is effective only for the 5-year period following the election if the consumer does not submit to the agency for purposes of paragraph (2)(B); and

**(B)** provide to the consumer a notice of election form, if requested by the consumer, not later than 5 business days after receipt of the notification of the election through the system established under paragraph (5), in the case of a request made at the time the consumer provides notification through the system.

**(4) Effectiveness of election**
An election of a consumer under paragraph (1)—

**(A)** shall be effective with respect to consumer reporting agency beginning 5 business days after the date on which the consumer notifies the agency in accordance with paragraph (2);

**(B)** shall be effective with respect to a consumer reporting agency—

**(i)** subject to subparagraph (C), during the 5-year period beginning 5 business days after the date on which the consumer notifies the agency of the election, in the case of an election for which a consumer notifies the agency only in accordance with paragraph (2)(A); or

**(ii)** until the consumer notifies the agency under subparagraph (C), in the case of an election for which a consumer notifies the agency in accordance with paragraph (2)(B);

**(C)** shall not be effective after the date on which the consumer notifies the agency, through the notification system established by the agency under paragraph (5), that the election is no longer effective; and

**(D)** shall be effective with respect to each affiliate of the agency.

**(5) Notification system**

**(A) In general**
Each consumer reporting agency that, under subsection (c)(1)(B), furnishes a consumer report in connection with a credit or insurance transaction that is not initiated by a consumer, shall—

**(i)** establish and maintain a notification system, including a toll-free telephone number, which permits any consumer

whose consumer report is maintained by the agency to notify the agency, with appropriate identification, of the consumer's election to have the consumer's name and address excluded from any such list of names and addresses provided by the agency for such a transaction; and

**(ii)** publish by not later than 365 days after September 30, 1966, and not less than annually thereafter, in a publication of general circulation in the area served by the agency—

**(I)** a notification that information in consumer files maintained by the agency may be used in connection with such transactions; and

**(II)** the address and toll-free telephone number for consumer to use to notify the agency of the consumer's election under clause (i).

**(B) Establishment and maintenance as compliance**
Establishment and maintenance of a notification system (including a toll-free telephone number) and publication by a consumer reporting agency on the agency's own behalf and on behalf of any of its affiliates in accordance with this paragraph is deemed to be compliance with the paragraph by each of those affiliates.

**(6) Notification system by agencies that operate nationwide**
Each consumer reporting agency that compiles and maintains files on consumers on a nationwide basis shall establish and maintain a notification system for purposes of paragraph (5) jointly with other such consumer reporting agencies.

15 U.S.C. § 1681b(e).

18. "OptOutPrescreen.com is the official Consumer Credit Reporting Industry website to accept and process requests from consumer to Opt-In or Opt-Out of firm offers of credit or insurance."[3] So, OptOutPrescreen.com comprises the CRAs' compliance with 15 U.S.C. § 1681b(e).

---

[3] https://www.optoutprescreen.com/

19. TransUnion violated 15 U.S.C. § 1681b(e) and the FCRA by publishing and selling Plaintiffs' personal information to its users and subscribers after Plaintiffs exercised their express right to prohibit the sale of this information.

## CLAIMS FOR RELIEF

20. The foregoing alleged acts and omissions of TransUnion violated the FCRA because on 06/21/2017, Plaintiff, Dina Valladares, exercised their statutory right to affirmatively stop the CRAs from selling Plaintiff's personal information to their users and subscribers by opt out election via optoutprescreen.com and TransUnion did thereafter publish Plaintiff's personal credit information to third parties seeking such information for the purpose of prescreened offers in violation of the FCRA.

21. The foregoing alleged acts and omissions of TransUnion violated the FCRA because on 05/15/2019, Plaintiff, Eddy Barrios, exercised their statutory right to affirmatively stop the CRAs from selling Plaintiff's personal information to their users and subscribers by opt out election via optoutprescreen.com and TransUnion did thereafter publish Plaintiff's personal credit information to third parties seeking such information for the purpose of prescreened offers in violation of the FCRA.

22. TransUnion is liable to Plaintiffs for the actual damages they sustained by reason of TransUnion's willful violations of the FCRA in an amount to be determined by the trier of fact, or $1,000 in statutory damages, whichever is greater, and punitive damages in an amount to be determined by the trier of fact and Plaintiffs' reasonable attorneys' fees, all pursuant to 15 U.S.C. § 1681n; and/or TransUnion is liable to Plaintiffs for actual damages Plaintiffs sustained by reason of TransUnion's negligent violations of the FCRA in an amount to be

determined by the trier of fact and Plaintiff's reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs' request the Court grant them the following relief:

1. Award Plaintiffs' the maximum statutory damages against TransUnion, pursuant to 15 U.S.C. § 1681n for TransUnion's willful violations of the FCRA;

2. Award Plaintiffs' their actual damages against TransUnion, pursuant to 15 U.S.C. § 1681n or §1681o for TransUnion's violations of the FCRA;

3. Award Plaintiffs' punitive damages against TransUnion, pursuant to 15 U.S.C. § 1681n for TransUnion's willful violations of the FCRA;

4. Award Plaintiffs' Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n, §1681o;

5. A trial by jury; and

6. Any other relief to which Plaintiffs may be entitled.

Date: May 27, 2022

        Respectfully submitted,

        /s/Jonathan Raburn
        Jonathan Raburn
        ATTORNEY FOR PLAINTIFF
        Louisiana Bar Roll No. 28728
        McCarty & Raburn, A Consumer Law Firm, PLLC
        2931 Ridge Rd, Suite 101 #504
        Rockwall, TX 75032
        jonathan@crediterrorlaw.com
        Telephone: 225-412-2777

        /s/Dennis McCarty
        Dennis McCarty
        ATTORNEY FOR PLAINTIFF
        Mississippi Bar Roll No. 102733
        Supreme Court of the United States Bar No. 302174
        Federal Bar No. 993800
        McCarty & Raburn, A Consumer Law Firm, PLLC
        2931 Ridge Rd, Suite 101 #504
        Rockwall, TX 75032
        Telephone: (214) 296-9240
        Fax (817) 887- 5069
        dennis@crediterrorlaw.com

        /s/Kyle Kaufman
        Kyle Kaufman
        ATTORNEY FOR PLAINTIFF
        Louisiana Bar Roll No. 39232
        McCarty & Raburn, A Consumer Law Firm, PLLC
        2931 Ridge Rd, Suite 101 #504
        Rockwall, TX 75032
        kyle@crediterrorlaw.com
        Telephone: 225-412-2777